UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| In re:<br>    MELISSA A. MARESCA.<br>    *Debtor.* | Case No.: 16-30755 (AMN)<br>Chapter 7 |
| MELISSA A. MARESCA,<br>    *Movant*<br>v.<br>TERRY DONOVAN,<br>    *Respondent* | Re: ECF Nos. 57, 59, 61, 62, 64,<br>65, 66, 67, 69, 71 |

## MEMORANDUM OF DECISION AND ORDER GRANTING MOTION TO AVOID LIEN IMPAIRING EXEMPTION IN PROPERTY USED AS A RESIDENCE BY A DEPENDENT OF THE DEBTOR PURSUANT TO 11 U.S.C. §§ 522(d)(1) AND 522(f)(1)

Melissa A. Maresca ("Debtor"), filed a Chapter 7 petition on May 12, 2016 (the "Petition Date"). ECF No. 1. On November 4, 2017, the Debtor filed a motion to avoid the judicial liens of Attorney Terry Donovan and another creditor (the "Motion") because they allegedly impaired Ms. Maresca's exemption in real property used by her dependent child, periodically, pursuant to 11 U.S.C. § 522(f).[1] ECF No. 57. The real property in issue is known as 33 Laurel Road, Essex, Connecticut (the "Property"). ECF No. 57.

---

[1] Unless otherwise noted, all statutory citations refer to Title 11 of the United States Code, commonly referred to as the "Bankruptcy Code". ECF No. 57 is the Debtor's second motion to avoid a lien under § 522(f). Her first motion, ECF No. 9, was denied for failure to prosecute. ECF No. 56.

1

Terry Donovan ("Creditor"), the holder of the larger judicial lien[2] (the "Judicial Lien"), objected to the Motion.[3]  ECF No. 59.

While the parties agree on many of the underlying facts relevant to this dispute, they do not agree as to the value of the Property on the Petition Date.  The Debtor contends the value was $465,000.00, while the Creditor thinks a higher value of $560,000.00 should be found.  *Compare,* ECF Nos. 66, 71.  Because the court concludes that the Debtor may assert an exemption pursuant to 11 U.S.C. § 522(d)(1) in her interest in the Property premised on her dependent child's use of the Property as a residence, and in light of the undisputed outstanding mortgage debt that was senior in priority to the Judgment Lien on the Petition Date, the court need not resolve the parties' differences of opinion as to value.

## Jurisdiction

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and the bankruptcy court has the power to enter a final judgment, subject to traditional rights of appeal.  Venue is proper in this District.  28 U.S.C. § 1409.

## Relevant Facts

---

[2]   The Motion asserted the Creditor first recorded a judicial lien against the Property for $20,000.00 on October 13, 2013, and later recorded a second judicial lien against the Property for $70,943.40, that relates back in time to the attachment of the first judicial lien. ECF No. 57.  In their joint stipulation of facts, the parties contend the Creditor holds one lien in the amount of $70,943.40.  ECF No. 61, ¶ 21.

[3]   Citibank, N.A., holder of another judicial lien in the amount of $3,024.36 encumbering the Property, did not file a response.  As discussed more fully herein, the Debtor is entitled to avoid both the Citibank, N.A., judicial lien, and the Creditor's (Ms. Donovan's) lien under 11 U.S.C. § 522(f).  Because Creditor's objection requires a more detailed analysis, this Memorandum of Decision refers only to her judicial lien encumbering the Property.

2

The parties – formerly attorney and client – agree on many of the material facts. ECF No. 61. Undoubtedly, the parties' former attorney-client relationship has deteriorated and the court is mindful that the state court has determined the attorney provided legal services to the client/Debtor in connection with her divorce for which compensation was due. The bankruptcy court's task here, however, is to determine the extent of the exemption provided by Congress to bankruptcy debtors having dependents who live in real property owned by the debtor but where the debtor may not reside, pursuant to 11 U.S.C. § 522(d)(1). It is with this focus that the court has considered the parties' argument and stipulation of facts.

The Debtor and her ex-husband jointly purchased the Property in 2005, incurring mortgage debt in the original amount of $436,000. ECF No. 61, ¶ 1-3. The ex-husband (who was then married to the Debtor) was the borrower on the mortgage loan note and both the Debtor and the ex-husband executed the mortgage. ECF No. 61, ¶ 4. At some point, a second mortgage was recorded against the Property and it appears undisputed that as of the Petition Date the total mortgage debt recorded against the Property – all being prior in interest to the Judgment Lien – was approximately $525,899.26. ECF No. 57, ¶ 3(a) and 3(b). Pursuant to the Debtor's bankruptcy schedules, she owned a two-thirds interest in the Property on the Petition Date.[4] ECF No. 1, p.10.

In 2011, the Debtor retained the Creditor as her attorney in a divorce action that resulted in the entry of a divorce decree in 2013. ECF No. 61, ¶ 11, 14. On the Petition Date, the Debtor's child ("Child") was a minor and a dependent of the Debtor. The divorce decree awarded "joint legal custody" of the Child to the Debtor and her ex-husband, "with

---

[4] *But see,* Note 6, hereafter. There is some confusion as to the percentage of the Property owned by the Debtor but it does not affect the overall analysis, as discussed later in this Memorandum of Decision.

3

the primary residence of [the Child] to be with" the Debtor.  ECF No. 61, ¶ 15.  Although the divorce decree contemplated the Property would be sold shortly after the divorce decree entered, the Debtor and the ex-husband agreed to modify the decree to delay the sale of the Property and those agreements were approved by the state court.  ECF No. 61, ¶¶ 22, 25.  On the Petition Date, the ex-husband resided at the Property while the Debtor resided in a rental apartment in another town.  ECF No. 61, ¶¶ 22-27.  Despite those modifications, the Child "spends time with both parents," and attends school in the town where the Property is located.  ECF No. 61, ¶ 26, 28.

Prior to the Petition Date, the Creditor, Ms. Donovan, obtained a state court judgment against the Debtor for unpaid legal fees relating to the divorce proceeding in the amount of $70,943.00, which forms the basis for the pre-petition Judicial Lien in dispute here.  ECF No. 61, ¶ 21.

## Discussion

Section 522(d)(1) of the Bankruptcy Code provides, in pertinent part, that a debtor may claim an exemption in, "[t]he debtor's aggregate interest, not to exceed $23,675.00 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . ."  11 U.S.C. § 522(d)(1).  Debtors filing bankruptcy may elect to exempt certain property under either a state law exemption scheme, or the exemptions provided in the Bankruptcy Code in § 522.  Here, the Debtor elected to use the federal exemption scheme provided by the Bankruptcy Code, rather than the (perhaps) more generous State of Connecticut homestead exemption that may apply for up to $75,000 of value in a debtor's primary residence.  *See*, Conn. Gen. Stat. § 52-352a.

4

The exemption available in § 522(d)(1), is commonly referred to as the "homestead" exemption, although the term "homestead" does not appear in § 522. See, 4 *Collier on Bankruptcy* ¶ 522.09 (16th ed. 2018). It is generally understood that § 522 is intended to protect a debtor's interest in her home from creditors, in order to "assist a debtor in keeping a roof over [her] head, and facilitate a Debtor's 'fresh start.'" *In re Brown*, 299 B.R. 425, 428 (Bankr. N.D.Tex. 2003). This understanding is consistent with the liberal construction of bankruptcy exemptions in favor of a debtor. *In re Wegrzyn*, 291 B.R. 2, 8-9 (Bankr. D. Mass. 2003). The text of § 522(d)(1) does not refer to a debtor's homestead; instead, it refers to a debtor's or a dependent of a debtor's "residence." The place where one "lives," or "resides" or is "domiciled," can be difficult to define. *In re Frame*, 120 B.R. 718, 723 (Bankr. S.D.N.Y. 1990) ("Residence, when used in a sense other than domicile, is one of the most nebulous terms in the legal dictionary and can have many different meanings depending on the context in which it is used."). Because the term "residence" is not defined under the Bankruptcy Code, courts have used two methods to interpret the term as used in § 522(d)(1): the majority "state law" approach, and the minority "plain meaning" approach. *In re Stoner*, 487 B.R. 410, 415-16 (Bankr. D.N.J. 2013).

Under the state law approach, courts have equated the term "residence" in § 522(d)(1), with the term "homestead," and looked to state law for the contours of the Debtor's right to exempt an interest in a homestead because "a homestead, as a property interest, is defined by state law." *Brown*, 299 B.R. at 428 (*citing Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329 (1991)). As applicable here, Connecticut law provides for a homestead exemption, and defines a "homestead" as "owner-occupied real property . . .

used as a primary residence." Conn Gen. Stat § 52-352a. Courts have articulated a three factor test debtors must satisfy in order to be entitled to the Connecticut homestead exemption. "First, the individual must 'own' the subject real property within the meaning of [Conn. Gen. Stat.] § 52–352a as of the relevant time. Second, the individual must 'occup[y]' the subject real property within the meaning of [Conn. Gen. Stat. §] 52–352a as of the relevant time. Third, the subject real property must be 'used as a primary residence' within the meaning of [Conn. Gen. Stat.] 52–352a as of the relevant time." *In re Kujan*, 286 B.R. 216, 220-21 (Bankr. D. Conn. 2002).

But, Connecticut state law is not helpful to answer the question of whether an exemption may be asserted by a debtor when only the debtor's dependent (and not the debtor) uses the property as a residence. Connecticut's homestead exemption statute is similar to that of other states in the Second Circuit, in that, none of the exemption statutes in Connecticut, New York or Vermont addresses the right of a debtor to claim an exemption in property that a dependent of the debtor uses as a residence. *See,* N.Y.C.P.L.R. § 5206(a) (McKinney 2018); Vt. Stat. Ann. Tit. 27 § 101 (West 2018). Some states, including for example, Ohio, have exemption statutes that provide a debtor may claim an exemption in property that a dependent of the debtor uses as a residence. Ohio Rev. Code Ann. § 2329.66(a)(1)(b) (West 2017) (exempting a "person's interest, . . . in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence."); *see also In re Miller*, 157 B.R. 621 (Bankr. N.D. Ohio 1993) (concluding a debtor was entitled to claim an exemption under Ohio law in property that his dependents resided in, but that he did not).

While federal courts look to state law to determine property rights, here, it appears the federal statute may afford coverage that is unaddressed in the applicable state statute, rendering state law inapplicable. *See generally, Butner v. United States*, 440 U.S. 48 (1979). The court's review of Connecticut law reveals nothing construing language similar to the Bankruptcy Code's exemption for property the dependent of a debtor uses as a residence.

The court concludes the minority approach, relying on the plain meaning of the federal statute, is better employed in this case. In reaching this conclusion the court begins with "the plain language of the statute," and "must presume that [Congress] says in a statute what it means and means in a statute what it says there," and apply the law as it is written. *Dodd v. United States*, 545 U.S. 353, 357 (2005); *Universal Church v. Geltzer*, 463 F.3d 218, 223 (2d. Cir. 2006). Under the "plain meaning" approach, some courts have examined the distinction between the word residence used in § 522(d)(1), and the word homestead, used more commonly under state law. Some courts have concluded that the use of the term "residence" in § 522, as opposed to the modified term "primary residence" as used in §§ 101(13A), 1123(b)(5) and 1322(b)(2), suggests Congress intended to permit a debtor to exempt a wider range of exempt property, compared to what a debtor would be entitled to exempt under state law. *In re Lawrence*, 469 B.R. 140, 142 (Bankr. D. Mass. 2012) ("The only other requirement for eligibility under § 522(d)(1) is that the debtor "uses" the residence."); *In re Demeter*, 476 B.R. 281, 291 (Bankr. E.D. Mich. 2012) (concluding that while Michigan law afforded an exemption to a homestead used as a "principle residence," a plaining reading of "residence" in § 522(d)(1), did not require that the debtors use the property as their "primary" residence.)

7

Here, the statute clearly provides that a debtor may claim an exemption in real property that "a dependent of the debtor uses as a residence."

As noted, the Debtor acknowledged that she did not use the Property as a residence or homestead for herself as of the Petition Date.[5]  Rather, she claimed that the Property was used by her dependent Child as a residence, and thus she was entitled to claim an exemption in the Property pursuant to § 522(d)(1).  Although the Creditor did not contest that the Child resided at the Property as of the Petition Date, she relied on Connecticut law to argue the Debtor is not entitled to claim an exemption in the Property because the Debtor herself does not use the Property as a residence at all and the Child does not use the Property as a primary residence.  ECF No. 52.

Here, there does not appear to be a serious factual dispute regarding the Child's use of the Property.  The Debtor asserted in her affidavit that the Property is "my dependent [child's] residence."  ECF No. 57.  The Creditor conceded that the Child spends time at the Property on "overnight and weekend visitation[]" with the ex-husband, but the Creditor asserted neither the Debtor, nor the Child, occupied the Property as an owner, nor used the Property as a primary residence.  ECF No. 52.  The parties agree the Child attends school in the school district where the Property is located, and the court finds that this fact, together with the acknowledgement that the Child regularly occupied the Property as of the Petition Date, establishes that the Child used the Property as a residence.  That the Child uses the Property as a residence – and regardless of the

---

[5]  In her petition and bankruptcy schedules, the Debtor listed her address as in a different town than the town where the Property is located. ECF No. 1. On Schedule A/B, the Debtor listed a "2/3 Interest" in the Property. ECF No. 1. On Schedule C, the Debtor claimed the Property as exempt under § 522(d)(1), valuing her exemption at $1.00, with the notation "Residence for dependent minor child . . . ." ECF No. 1. As discussed at Note 6, the court determines that the Debtor owns a 1/2 interest in the Property based on the record.

8

Debtor's use of the property – is sufficient for the Debtor to invoke the federal exemption scheme set forth in § 522(d)(1) of the Bankruptcy Code.

While some courts have applied the "primary residence" test to the § 522(d)(1) exemption, because state law homestead exemptions are typically available only for the "primary residence" of a debtor, Connecticut law is simply silent on the right of a debtor to claim as exempt an interest in property that a *dependent, but not a debtor*, uses as a residence. *See, Brown,* 299 B.R. at 428. That type of exemption (in a dependent's residence) is simply different from what Connecticut homestead exemption law contemplates, and is created entirely by the federal statute. According to Black's Law Dictionary a residence is "the place where one actually lives," and a person thus may have "more than one residence at a time." *In re Lawrence*, 469 B.R. 140, 142 (2012)(*citing* BLACK'S LAW DICTIONARY 1423 (9th ed. 2009)). Turning to the Bankruptcy Code itself, the court finds persuasive the argument that Congress could have said "primary" residence if that is what it meant, since it used that exact phrase in several other Bankruptcy Code provisions. *See,* 11 U.S.C. §§ 101(13A), 1123(b)(5) and 1322(b)(2).

Based on the circumstances presented here, the court concludes the Property need not be the primary residence of the dependent Child in order for the Debtor to claim an exemption in the Property. The constitutional authority of Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States" would clearly encompass a federal statute defining the right of a debtor to exempt property used by a dependent only when it is used as a primary residence. But Congress has not chosen to

9

exercise its power to fashion any such rule. The court declines to add this requirement to the plain language of 11 U.S.C. § 522(d)(1).

## The Value of the Property

Having determined the exemption applies under these facts, the question now becomes whether the Judicial Lien impairs the Debtor's exemption in the Property. The parties dispute the value of the Property as of the Petition Date. The best case scenario for the Creditor would be a determination that the value of the Property as of the Petition Date was $560,000.00. ECF No. 71. The mathematical formula to be applied under § 522(f), when a debtor claims an exemption in property she owns jointly, is to take the value of the lien to be avoided, plus the value of the debtor's interest of the consensual liens on the property, plus her claimed exemption. *In re Fox*, 353 B.R. 388, 393-94 (Bankr. D.Conn. 2006)(*citing Miller v. Sul (In re Miller)*, 299 F.3d. 183, (3rd Cir. 2002)). A judicial lien may be avoided to the extent the sum of those three figures exceeds a debtor's interest in the property. The formula articulated in *Miller* as applied here, must take into consideration the Debtor's interest in the Property, which the court assumes is one-half (1/2), based on the information set forth in the parties' appraisals.[6]

Here, both the Judicial Lien to be avoided and the claimed exemption apply to the Debtor's one-half interest in the Property, only. Taking the Creditor's value of $560,000.00 and dividing it in two results in a hypothetical value of $280,000.00 for the

---

[6] While the Debtor's Schedule A/B indicated the Debtor owned a "2/3 Interest" in the Property with her ex-husband, the court assumes for purposes of this decision that the Debtor owns only a 1/2 interest in the Property with her ex-husband. The parties "Joint Stipulation of Facts," states that the "deed conveyed the Property to the couple jointly, with a right of survivorship." ECF No. 61, ¶ 3. Although the Joint Stipulation of Facts did not include a copy of the deed, both of the parties appraisal reports did include identical copies of the deed conveying the Property to the Debtor and the ex-husband. The language of the deed conveyed the Property to the Debtor and her ex-husband "as joint tenants with the rights of survivorship and not as tenants in common . . . " and makes no provision for granting the Debtor a 2/3 interest in the Property. *Compare*, ECF No. 1 with ECF No. 67, 71.

10

Debtor's one-half interest. The mortgage debt as of the Petition Date was $525,899.26, and half that amount is $262,949.63. Adding the applicable portion of the mortgage debt ($262,949.63) to the Judicial Lien figure ($70,943.00) and the claimed exemption amount ($23,675.00)[7], results in encumbrances against the Debtor's interest in the Property totaling $357,567.63. Subtracting the encumbrances totaling $357,567.63 from the hypothetical value of the Debtor's interest in the Property of $280,000.00 results in a negative: -$77,567.63.[8] It is clear that even if the court were to adopt the most generous value offered by the Creditor, or $560,000, there would be no equity above and beyond the Debtor's portion of the mortgage debt plus her statutory exemption available to secure the Creditor's Judicial Lien.[9]

Based on this analysis the court need not conduct an evidentiary hearing to determine the value of the Property because even if the Creditor were to win that fight, it would lose the war.

As to the interpretation of § 522(d)(1) as it relates to the exemption for property used by a dependent as a residence in this case, the court has considered all other arguments of the Creditor and finds them to be without merit.

### Conclusion

For the foregoing reasons the Motion is granted and the Creditor's objection is overruled. The Judicial Lien of the Creditor is avoided pursuant to 11 U.S.C. § 522(d)(1),

---

[7] Because the Debtor "would have been entitled" to an exemption in the amount of $23,675.00 pursuant to 11 U.S.C. § 522(d)(1), and because she elected to use the federal exemptions available under the Bankruptcy Code, the fact that the Debtor used a value of $1.00 on her Schedule C ("The Property You Claim as Exempt") is not relevant. *See*, 11 U.S.C. § 522(f).

[8] Assuming the Debtor did own a 2/3 interest in the Property, as she maintains in her Schedules, there would still be no equity above the Debtor's portion of the mortgage plus her statutory exemption to secure the Creditor's Judicial Lien.

[9] Independent of the Creditor's Judicial Lien, taking into account the Debtor's statutory exemption there is also no available equity to secure Citibank, N.A.'s judicial lien.

based on the use of the Property as a residence by the Debtor's minor, dependent Child on the Petition Date.  A separate order granting the Motion using the Court's typical form of order that may be recorded on the land records will enter.

          Dated on June 28, 2018, at New Haven, Connecticut.

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut